NO. 8090

COURT OF APPEAL

PARISH OF ORLEANS.

A. MARX & SONS

versus

JOHNSON IRON WORKS LTD.

**8090**

Court of Appeal.
PARISH OF ORLEANS.
FILED

38

Dinkelspiel; J.

This suit involves the question, whether or not plaintiff bought from the defendant, the steam yacht called the Huntress, and defendant failing to deliver, if they are responsible for damages; the allegations being that defendant did on or about February 13th, 1919, commence negotiations with plaintiff looking to the sale of the yacht Huntress, for a certain price, without disclosing the name of the principal to whom the yacht belonged, and that plaintiff brought said yacht and failing to receive his property has brought this suit for damages, claiming the sum of Fifteen Hundred Dollars.

The answer substantially, whilst admitting the writing of certain letters referred to in plaintiff's petition and admitting that defendants offered at one time to sell to plaintiff, the launch Huntress, for the sum of Five Hundred Dollars, being by letter dated February 24th, 1919, but that said offer was expressly conditioned upon prompt acceptance and averring further that said offer was not promptly accepted, the offer cancelled and there was no actual acceptance of the offer; defendant denies the alleged value put by plaintiff on said yacht and asserts that no matter what the value may have been, they are not responsible to plaintiff as they, plaintiff, did not accept the offer when tendered.

Looking at the correspondence between these parties we find a telegram from the owner, James Deitrick, dated New York, February 4th, 1919, addressed to Warren Johnson, Manager Johnson Iron Works, which reads:

"Yours 30th just received, please secure customer for Huntress if possible, if no customer authorize you sell at best advantage to junk dealers."

February 13th, 1919, there follows this letter.

"A. Marx & Sons,
643 Tchoupitoulas Street,
New Orleans, La.
Dear Sirs:-
We have what is left of a 90 ft. steam launch in the river moored at our Algiers wharf. It came from the Naval Station

40

and is for sale.

Would you look at it and make us an offer on same.

> Very truly yours,
> THE JOHNSON IRON WORKS, LTD.
> (Signed) Geo. Koffskey
> Superintendent."

We find further the answer to this letter, addressed to the Johnson Iron Works, Ltd., New Orleans, La.

"Gentlemen:--

Your communication of the 13th received. One of our representatives will call on your Mr. Geo. Koffskey within next few days to look over your Launch for sale, and will submit you proposition on same.

> Yours truly,"

This letter was followed by a letter addressed to Johnson Iron Works, Algiers, La.

"Gentlemen:-

Confirming conversation with your Mr. Kofsky this morning we can offer you $500.00 for the steam yacht Huntress which is moored near your dock and which our Mr. Hunt inspected yesterday.

This offer is made with an understanding that all the parts necessary to the operation of the boat are with it excepting the wheel and compass which we understand are missing. In other words just what was seen and inspected by Mr. Hunt is covered in this offer.

Trusting that your principal will see fit to accept it. We are,

> Yours very truly,"

On the 24th of February, 1919, defendant wrot to plaintiff as follows:

> "Mr. Maurice F. Hunt, Gen'l Manager,
> A. Marx & Sons, Machinery Department,
> 1645 Tchoupitoulas Street,
> New Orleans, La.
> Dear Sir:-

Yours of the 20th received as regards the Steam Launch "Huntress", saying with an understanding that all parts necessary to the operation of the boat are with it excepting the wheel and compass.

Now as a matter of fact, We have never had an inventory made of the parts not considering it necessary for economy.

If you take the boat as it lays, without the ropes that tie her to our wharf, you are welcome to it for $500.00 cash.

> Please advise promptly,
> Very truly yours,
> THE JOHNSON IRON WORKS, LTD.
> (Signed) Geo. Koffskey,
> Superintendent."

March 25th, 1919, we find a letter addressed to Mr. Maurice F. Hunt, Manager, A. Marx & Sons.

"Your offer of $500.00 for launch "Huntress" was not

accepted and furthermore the owner arrived in the City last evening from New York and at 5:00 PM had the Huntress taken from our wharf to the New Orleans Dry Dock.    He sold the boat to someone else.

Sorry but could not be changed.

Very truly yours,
THE JOHNSON IRON WORKS, LTD.
(Signed) Geo. Koffskey
Superintendent."

And to this letter plaintiff wrote the following reply

the next day, the 26th of March, addressed to the Johnson Iron

Works.

"We have just received your letter of the 25th advising us that the owner has not accepted our "offer" of $500.00 for the launch "Huntress" and that he has sold the boat to someone else.

We beg to advise you that we made no "offer" for the purchase of this boat at $500.00.  We have a contract for the purchase of this boat for $500.00 confirmed to you by our letter of March 18th.    We cannot accept the cancellation of this contract on March 26th.   In as much as you acted for an undisclosed principal you would be responsible.   We think you should bring this home immediately to the owner because he, of course is likewise responsible and by so doing you will protect yourself.

We are writing this letter in duplicate, and ask that you kindly sign and return one copy to bearer.

Yours truly,"

There are several other letters in connection with this

matter but none, of themselves sufficiently important to in any

wise bear on the result.

We have carefully examined all the testimony in this

case.

The first witness, one of the plaintiffs, Mr. Edward

Marx knows nothing about this case except what his Manager, Mr.

Hunt advised him, and sometime subsequent going on the boat to

make an examination to ascertain the value.

Mr. Hunt testifies quite at length, giving his connec-

tion and his duties with plaintiff, identifying the various let-

ters that we have quoted; he swears that he represented plaintiff

in the dealings with the defendant in this case and also testi-

fies to a telephonic conversation that he had with Mr. Koffskey,

Superintendent of defendant defendant's works and amongst other

things says "an after considering the boat I wanted to know if

it was still in tact or if anything had been removed from the

42

boat as it was in the original state when we first started to examine it, he said nothing had been removed, it was exactly as it was some two weeks before, then I asked him what he thought of the vessel, he said I think its a very good buy, its a bargain, when asked what the cost of reapirs would be Mr. Koffskey replied that he could not say as to that, I asked him if we could still have the vessel for $500.00, the price he had stated to me, he said yes, you can have it for $500.00, I said I will write today and confirm it"; and then goes on to testify about storing the boat and what arrangements he could make and that Mr. Kofffskey answered "I would have nothing in the world to do with that"and also that he had made photographs of the vessel, further that he had offered this boat to Mr. Schwartz for $2500.00 and that Mr. Schwartz finally agreed to pay him $1500.00, further testified about the vessel being removed and by whose authority and when he was told the name of the owner, he had never heard of it and it had never been mentioned prior to this time, he also spoke of the value of the vessel, what it could be sold for.    Doubtless his famkkkaxkkkax familiarity and his experience entitles his testimony in that regard to great weight.

On Cross examination.

Q. Mr. Hunt, you received this letter which is marked P5 and was written February 24th, 1919, about the date it was written or a day or two later did'nt you?

A. Yes sir.

Q.  That was after you had inspected the vessel, wasn't it?

A. Yes; after my first visit to the vessel.

Q. And you never acted on this offer to sell the Huntress for $500.00 until March 18th?

A. No, I didn't accept the offer until then.

        The other witnesses, without naming them simply give their opinion as to the value of the vessel.

        The witnesses summoned on behalf of defendant were Warren Johnson, E. D. McNair, G. M. Grace and George Koffskey.

43

The witness Koffskey, after stating his position with the defendant as General Superintendent and giving the time he was connected with the company, forty six years, says:

Q. Do you remember a conversation you had over the phone with a Mr. Hunt, of A. Marx & Sons, on March 18, 1919, relative to the sale of the yacht Huntress?

A. Well, Mr. Hunt was on the phone. I don't hear very well on the phone, and I called Mr. Grace to say what was to be said.

Q. Then what happened?

A. Mr. Grace spoke about the boat, about the $500.00 and I told Mr. Grace to tell him before we could sell the boat to him I would notify Mr. Warren Johnson who would get in touch with Mr. Dietrich being as Mr. Hunt had spoken about a bill of sale, or something.

Q. Did that close the conversation?

A. That was the whole conversation.

Q. Did you tell Mr. Grace to tell Mr. Hunt he could have the boat for $500.00?

A. $500.00 cash, but when he asked for a bill of sale that made a difference, and I told Mr. Grace at the time to tell him that it would be referred to Mr. Warren Johnson, the manager, and he in turn would get in touch with Mr. Dietrich, the party that sent the boat there from the naval station.

Q. (at page 15) Did you ever make a contract to sell the Huntress to A. Marx & Sons for $500.00?

A. Never. I just communicated with three of the junk men by letter, and received no letter, until some time after, and I think Mr. Hunt came to the shop to see what was on the boat, and I sent him to one of the men on the outside, outside foreman, I don't know whether Mr. Amrstrong or Mr. Roup, at the time they were working on the wood ships, installing the machinery. After that I heard nothing more, except about Mr. Hunt phoning there, and then I got Mr. Grace on the telephone.

On Cross examination.

Q. Mr. Koffskey, in that conversation over the telephone did you

44

not either say yourself, or have Mr. Grace say, that the boat could be purchased for $500.00 cash?

A. We offered the boat for $500.00 cash, yes, sir.

Q. You renewed that offer in the telephone conversation?

A. We offered that by communication, a letter.

Q. Didn't you do it also in this telephone conversation, telling him he could have it for $500.00 cash?

A. Not that I remember.

Q. (page 16) I show you letter dated March 18, 1919, already introduced in evidence as P-6, and ask you if you received the original of that letter?

A. I never sold the boat.

"The sale was not made because questions had to be asked outside." Mr. Grace, a witness on behalf of the defendant and referred to by Mr. Koffskey as the man he employed, not hearing well, to go to the telephone and receive and answer communications, after stating his position with the defendant of the Company, says:

Q. Do you remember anything about a conversation over the telephone between Mr. Koffskey, the manager of the Johnson Iron Works and Mr. Hunt, of A. Marx & Sons, on March 18, 1919, relative to the sale of the Yacht Huntress?

A. Mr. Koffskey, the superintendent. I think it was the 17th or 18th of March that he buzzed to me, calling me from the office. When he got a telephone call he generally called me in, for anything like that, because he don't hear distinctly. He handed me the phone and said "Marx is on the phone," and he told me to tell them that the $500.00 offer would'nt be accepted until they submitted it to Mr. Warren Johnson, who would submit it to the principal. And there was also something about a bill of sale, that they had to have a bill of sale, they asked for it, and they told him they would have to get that. They didn't know anything about that.

Q. (at page 10) What was done with the offer of $500.00?

45

A. Mr. Koffskey wrote me a note to hand to Mr. Johnson when he came in. He didn't come that evening. I put it on his desk. Next day he dictated a telegram to Mr. Dietrich, at New York, telling him what Marx had offered for the boat.

And then this witness testifies that "In the latter part of March, on the 25th or 26th, Mr. Dietrich, the owner, walked into the office about 5 o'clock when nearly everybody had left but Mr. Wilmer Johnson and I. He saw Mr. Johnson and Mr. Johnson called me and told me Mr. Deitrich was there to take the Huntress, and if it had been sold, and I told him no, and he asked why I said no. I said I had the correspondence and I had followed the case up, handling it for Mr. Koffskey.

Then the witness goes on and relates the taking of the of possession of the Huntress by the owner and telephoning Mr. Hunt the next day to that effect.

Q. What did he say?

A. Didn't say anything; hung up the phone.

We have thus quoted from portions of the testimony of the witnesses in this case, which we considered material to this decision and we find that neither in law nor in fact was there an absolute sale of the yacht Huntress to plaintiff by defendant; there were undoubtedly negotiations between these parties but in our opinion they came to no conclusion.

Art. 1797. CONSENT; COMMUNICATION OF. "When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This being a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence."

46

Art. 1798. Proposal and Acceptance. "As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point."

In the case of Holtzman vs. Millaudon, cited in the 18 ~~IowxkxxxkxkxxxxxxxkxxRxxxxkxx~~ Annual at page 29, the syllabus reads:

"A legal agreement is a concurrence of two minds upon the object and consideration of a contract. The will of both parties must unite on the same point.

A claimant must establish his claim with legal certainty. It is not enough that he make it probable."

Also see Reinecke vs. Bernhardt, 13 Court of Appeal Reports, p. 57.

We might go on to cite numerous authorities to the same effect, but we deem it unnecessary.

What we have quoted at length from the testimony of the witnesses in this case does not to our minds satisfy the law in reference to sales
/~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ and under these circumstances we conclude that the judgment of the Lower Court is correct.

For the reasons assigned it is hereby ordered, adjudged and decreed that the judgment of the Court aquo be and the same is hereby affirmed and costs of both Courts to be paid by plaintiff.

--Judgment Affirmed--